09-3877-ag
Rosario v. Holder

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: September 1, 2010      Decided: December 6, 2010)

Docket No. 09-3877-ag

- - - - - - - - - - - - - - - - - - - - - -x

JOSEFA ROSARIO,

Petitioner,

- v.-                                                    09-3877-ag

ERIC H. HOLDER, JR., in his capacity as
United States Attorney General,

Respondent.*

- - - - - - - - - - - - - - - - - - - - - -x


      Before:          DENNIS JACOBS, Chief Judge,
                       REENA RAGGI, Circuit Judge,
                       JED S. RAKOFF,** District Judge.

      Petitioner, a citizen of the Dominican Republic, seeks

cancellation of removal as an abused spouse under the

_____

* The Clerk of Court is respectfully instructed to amend the official case caption as shown above.

**The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

amended Immigration and Naturalization Act. 8 U.S.C. § 1229b(b)(2). An Immigration Judge concluded that Rosario was not "battered or subjected to extreme cruelty" as defined by the statute and therefore did not warrant discretionary cancellation of removal, and the Board of Immigration Appeals affirmed. We dismiss the petition for lack of subject matter jurisdiction because the BIA's decision raises no constitutional claims or questions of law.

FOR PETITIONER:  ELYSSA N. WILLIAMS (Andrew B. Insenga, Glenn L. Formica on the briefs)
Formica, P.C.
900 Chapel St. Suite 1200
New Haven, CT 06510

FOR RESPONDENT:  MATTHEW A. SPURLOCK (Tony West, Ada E. Bosque on the briefs)
U.S. Department of Justice
Office of Immigration
Ben Franklin Station
P.O. Box 878
Washington, DC 20044

DENNIS JACOBS, Chief Judge:

The Petitioner, Josefa Rosario, is a citizen of the Dominican Republic who seeks cancellation of removal as an abused spouse under the amended Immigration and Naturalization Act. 8 U.S.C. § 1229b(b)(2). An Immigration Judge ("IJ") found that Rosario was not "battered or

2

subjected to extreme cruelty" within the meaning of the statute and therefore did not warrant discretionary cancellation of removal. The Board of Immigration Appeals ("BIA") affirmed. We dismiss Rosario's petition for lack of subject matter jurisdiction because the BIA's decision raises no constitutional claims or questions of law.

**BACKGROUND**

Rosario was found credible by the IJ; we therefore adduce the facts to which she testified.

Rosario entered the United States on a one-month non-immigrant tourist visa in 1994. After overstaying by approximately two years, she married Pedro Martinez, a U.S. citizen, and petitioned to adjust her status to Legal Permanent Resident in 1996.

The marriage soured soon after the petition was filed, and Martinez became aggressive and insulting. There were approximately five incidents of physical abuse or intimidation in the three-month period between June 1997 and September 1997, when Martinez was jailed (for offenses unrelated to Rosario). There are no allegations of abuse after his release from prison in 2000.

During the incidents of abuse, Martinez (variously) grabbed Rosario by the arms and shoulders, shook her,

3

verbally insulted her, and threw her on the bed. Martinez also demanded money from her and threatened to withdraw her application for a Green Card. Rosario did not report these incidents to the police or seek medical attention.

During this time, Rosario's Green Card application languished, and, in 2000, it was denied as abandoned. In 2002, the Department of Homeland Security served Rosario with a Notice to Appear and charged her with removal.

At her Notice to Appear hearing, Rosario admitted she was in the U.S. illegally and conceded removability. Soon afterward, she filed a petition for Special Rule Cancellation of Removal under 8 U.S.C. § 1229b(b)(2)(A), which gives the Attorney General discretion to cancel the removal of an otherwise deportable alien who has been "battered or subjected to extreme cruelty" by her U.S. citizen spouse.

In 2008, an IJ denied Rosario's petition, concluding that she had not been "battered or subjected to extreme cruelty." Rosario appealed this decision to the BIA, which affirmed. Rosario now seeks review in this Court.

**DISCUSSION**

**I.**

4

As part of the 1994 Violence Against Women Act, Congress granted the Attorney General discretion to cancel the removal of otherwise deportable aliens who were found to have been "battered or subjected to extreme cruelty" by their U.S. citizen spouses.  Pub. L. No. 103-322, § 40703, 108 Stat. 1796, 1955 (1994) (codified at 8 U.S.C. § 1229b(b)(2)(A)).  The five requisites for this relief are:

> (1) "the alien has been battered or subjected to extreme cruelty by a spouse" who is a U.S. citizen or permanent resident;
>
> (2) "the alien has been physically present in the United States for a continuous period of not less than 3 years";
>
> (3) "the alien has been a person of good moral character during such period";
>
> (4) "the alien...has not been convicted of an aggravated felony"; and
>
> (5) "the removal would result in extreme hardship to the alien, the alien's child, or the alien's parent."

8 U.S.C. § 1229b(b)(2)(A)(i)-(v).

The determination as to whether an alien should be given this discretionary cancellation of removal is made by an IJ subject to appeal to the BIA.  In 1996, Congress stripped the federal courts of jurisdiction to review these discretionary rulings.  Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, §

5

306, 110 Stat. 3009, 3009-607 (codified at 8 U.S.C. § 1252(a)(2)(B)(i)).

Concerned that a complete ban on judicial review of BIA determinations might violate the Suspension Clause, the Supreme Court in 2001 construed the jurisdictional ban to allow for limited federal court review of BIA decisions. INS v. St. Cyr, 533 U.S. 289, 307 (2001). Specifically, the Court held that even where the Attorney General had discretion over whether to grant cancellation of removal, the alien was nevertheless entitled to a determination of whether she was *eligible* for discretionary cancellation, and that this determination of eligibility was reviewable in the U.S. Circuit Courts when it was "governed by specific statutory standards." Id. Thus, while the federal courts retained jurisdiction to review the legal question of statutory eligibility, the Attorney General's exercise of discretion could not be second-guessed.

The REAL ID Act of 2005 amended the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") to obviate the Supreme Court's Suspension Clause concerns. Pub. L. No. 109–13, § 106, 119 Stat. 231, 310 (codified in at 8 U.S.C. § 1252(a)(2)(D)); see also Xiao Ji Chen v. Gonzales, 471 F.3d 315, 326 (2d Cir. 2006) (describing

6

legislative history of REAL ID Act).  The REAL ID Act prescribed an exception to the general ban on judicial review of BIA decisions for Circuit Court review of "constitutional claims or questions of law."  8 U.S.C. § 1252(a)(2)(D).

In the wake of St. Cyr and the REAL ID Act, this Court described the scope of its jurisdiction to review BIA determinations in two ways.  First, based on St. Cyr, we stated that we could review those "nondiscretionary decisions" by the BIA that underlie its exercise of discretion in granting or denying cancellation of removal.  See, e.g., Rodriguez v. Gonzales, 451 F.3d 60, 62 (2d Cir. 2006) (describing scope of review as over nondiscretionary determinations underlying discretionary relief); Sepulveda v. Gonzales, 407 F.3d 59, 62–63 (2d Cir. 2005).  Later, based on the REAL ID Act, we stated that we could review "all constitutional claims or questions of law" raised by the BIA's exercise of its discretion.  See, e.g., Argueta v. Holder, 617 F.3d 109, 112 (2d Cir. 2010) (describing scope of review as over constitutional and legal questions).  These two characterizations, which may appear to be two separate avenues of jurisdiction, are congruent:  BIA statutory interpretation pursuant to an eligibility

7

determination is nondiscretionary and therefore reviewable precisely because it presents a legal question. In contrast, the BIA's factfinding, factor-balancing, and exercise of discretion normally do not involve legal or constitutional questions, so we lack jurisdiction to review them.

## II.

When the BIA's decision explicitly rests on a legal prescription or statutory interpretation, we unambiguously have jurisdiction to review it. See Sepulveda, 407 F.3d at 63 (holding that court has jurisdiction to review BIA determination that alien is ineligible for discretionary relief as a matter of law). Similarly, when the BIA explicitly finds an alien to be eligible for discretionary relief but then refuses to grant relief as an exercise of its discretion, such a decision is not reviewable. Determining whether we have jurisdiction to review is more difficult when the BIA is engaged in the application of law to facts.

We determine our jurisdiction by looking at the *underlying nature* of the BIA's determination rather than any gloss offered by the parties. Arqueta, 617 F.3d at 112 ("We

do not rely solely on a petitioner's description of his claims, but scrutinize a petitioner's arguments to determine whether they raise reviewable questions." (internal quotation marks omitted)); <u>Barco-Sandoval v. Gonzales</u>, 516 F.3d 35, 39 (2d Cir. 2008) ("[A] petitioner cannot us[e] the rhetoric of a constitutional claim or question of law to disguise what is essentially a quarrel about fact-finding or the exercise of discretion." (internal quotation marks omitted)).  We ask whether the BIA is expressing legal doctrine or whether it is engaged in the factfinding and factor-balancing that are at the core of its discretion.

Although, in some sense, every BIA decision involves the application of law to fact, not every such decision is reviewable.  <u>See</u> <u>Xiao Ji Chen</u>, 471 F.3d at 331 ("The mere use of the term 'erroneous application' of a statute will not, however, convert a quarrel over an exercise of discretion into a question of law.").  The mixed questions of law and fact in BIA decisions are reviewable in three situations:

> (1) Where the BIA applies the wrong statute, misinterprets the correct statute, or uses an erroneous legal standard;
>
> (2) Where the BIA's underlying factual determination is "flawed by an error of law"; and
>
> (3) Where the BIA's conclusion is "without rational justification," meaning it is located so far

9

> outside the range of reasonable options that it is erroneous as a matter of law.

See Mendez v. Holder, 566 F.3d 316, 322 (2d Cir. 2009) (articulating three situations); Barco-Sandoval, 516 F.3d at 39 (same); Xiao Ji Chen, 471 F.3d at 329 (same). Except in these scenarios, the BIA's application of law to fact amounts to the exercise of its discretion and does not raise the legal or constitutional question required for our jurisdiction.

## III.

Every new petition to review a BIA decision requires us to make a jurisdictional inquiry: first asking whether the BIA's decision involves a clear legal prescription; second, where the decision only involves the application of clearly established law to a set of facts, asking whether the BIA's determination comes within any of the three specific scenarios that justify review.

This Circuit has already considered our jurisdiction to review BIA rulings on certain other aspects of abuse-based cancellation of removal. In Rodriguez v. Gonzales, 451 F.3d 60 (2d Cir. 2006), we held that whether an alien has been convicted of an aggravated felony always presents a legal question and is therefore nondiscretionary and reviewable. Id. at 62-63. Similarly, in Sepulveda v. Gonzales, 407 F.3d

10

59 (2d. Cir. 2005), we suggested, but did not hold, that whether an alien satisfies the continuous physical presence requirement also presents a legal question and its therefore reviewable.  Id. at 63.  In Sepulveda, we also reviewed a BIA ruling that criminal convictions legally preclude finding that the alien is of "good moral character."  Id. at 63–64.  Although the fact-specific nature of a moral character assessment ordinarily suggests that it would constitute an exercise of discretion not a legal determination, we held in Sepulveda that the BIA's ruling on moral character presented a legal question in that particular case because it was explicitly premised on the criminal convictions *as a matter of law*.  Id.

In contrast, in Barco–Sandoval v. Gonzales, 516 F.3d 35 (2d Cir. 2008), and Mendez v. Holder, 566 F.3d 316 (2d Cir. 2009), we held that whether an alien would suffer "extreme hardship" if deported ordinarily does not require statutory interpretation but instead involves the application of the law to particular facts.  Thus, we lack jurisdiction to review such determinations unless they fall into one of the three categories described in Part II.

**IV.**

11

Now, we must decide whether we have jurisdiction to review BIA determinations as to whether a spouse has been "battered or subjected to extreme cruelty." Like "extreme hardship"--and unlike criminal conviction or continuous physical presence--whether an alien has been "battered or subjected to extreme cruelty" under the statute generally entails a factual judgment, not a legal prescription.

This conclusion finds support in the fact that Congress did not provide a specific statutory definition for the terms, and in the fact that the regulatory gloss on the terms, while requiring more than the unwanted touching of common law battery, contemplates the exercise of considerable discretion in assessing the totality of the circumstances. See 8 C.F.R. § 204.2(c)(1)(vi).[1]

---

[1] 8 C.F.R. § 204.2(c)(1)(vi) permits an abused spouse of a United States citizen or lawful permanent resident to self-petition for an adjustment of status. The regulation states that the phrase "was battered by or was the subject of extreme cruelty" includes, but is not limited to:

> being the victim of any act or threatened act of violence, including any forceful detention, which results or threatens to result in physical or mental injury. Psychological or sexual abuse or exploitation, including rape, molestation, incest (if the victim is a minor), or forced prostitution shall be considered acts of violence. Other abusive actions may also be acts of violence under certain circumstances, including acts that, in and of themselves, may not initially appear violent but that are a part of an overall pattern of violence.

Thus, BIA determinations as to whether an alien has been "battered or subjected to extreme cruelty" require the application of law to fact, rather than statutory interpretation. As such, we have jurisdiction to review these determinations only when the BIA applies an incorrect law or legal standard, bases its decision on a factfinding premised on an error of law, or reaches a conclusion that lacks any rational justification.

Finally, we observe that all but one of our sister circuits who have considered this question have reached the same conclusion. Johnson v. Attorney Gen., 602 F.3d 508, 511 (3d Cir. 2010) (holding that BIA "extreme cruelty" determination is discretionary and not reviewable); Stepanovic v. Filip, 554 F.3d 673, 679–80 (7th Cir. 2009) (same); Ramdane v. Mukasey, 296 F. App'x 440, 442 (6th Cir. 2008); Wilmore v. Gonzales, 455 F.3d 524, 527 (5th Cir. 2006); Perales-Cumpean v. Gonzales, 429 F.3d 977, 982 (10th Cir. 2005). But see Hernandez v. Ashcroft, 345 F.3d 824, 835 (9th Cir. 2003) (holding that BIA "extreme cruelty" determination is nondiscretionary and reviewable).

## V.

Rosario's petition turns on the question whether she qualifies as "battered or subjected to extreme cruelty."

13

Therefore, the BIA's decision in this case involves the application of law to fact:  a determination of whether Rosario's situation rendered her "battered or subjected to extreme cruelty" under the statute.  Rosario's petition therefore does not automatically raise a legal or constitutional issue; it only does so where the BIA applied the wrong law or misapplied the appropriate law or legal standard, based its decision on a factual finding premised on a legal error, or reached a conclusion so far outside the range of reasonable options as to be without rational justification.

Here, the BIA applied the correct law, 8 U.S.C. § 1229b(b)(2)(A)(i), and the correct legal standard, 8 C.F.R. § 204.2(e)(1)(vi), to Rosario's case.  There were no legal errors underlying any of the factual findings the BIA used to reach its decision.  And given the level of abuse Rosario claims to have suffered, it cannot be said that the BIA's conclusion was without rational justification.  Thus, the BIA's decision does not fall within any of the three scenarios where we retain jurisdiction to review.

Ultimately, the question whether the abuse Rosario suffered qualifies her for cancellation of removal is not answered by legal analysis but entails a weighing of facts and circumstances, the sort of value judgment that lies at

14

the core of the BIA's exercise of discretion.  The BIA's reasoning can be described as an application of law to fact, but that characterization cannot convert a factual determination into a legal question.  Because the BIA's decision raised no question of law, we may not second-guess its discretionary factual judgment that Rosario is not eligible for cancellation of removal.  Therefore, we lack jurisdiction to hear Rosario's petition.

## CONCLUSION

For the foregoing reasons, we dismiss Rosario's petition for review from an order of the Board of Immigration Appeals for lack of jurisdiction.

15